## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UZOMA KALU,

  Plaintiff,

  v.

INTERNAL REVENUE SERVICE, *et al.*,

  Defendants.

Civil Action No. 14-998 (JEB)

## MEMORANDUM OPINION

Concerned that she was wrongfully targeted for federal investigation, Plaintiff Uzoma Kalu submitted Freedom of Information Act requests to the Internal Revenue Service, the Transportation Security Administration, and the Federal Bureau of Investigation. After receiving what she considered to be insufficient responses, she filed this suit to compel the agencies to search for and release certain records. The parties have now cross-moved for summary judgment on various aspects of her claims. Because the Court sides with the government on some issues, but Kalu on others, it will grant each motion in part and deny each in part.

## I.    Background

Plaintiff, a physician from Columbus, Ohio, believes "that there is some type of error in . . . federal agencies' records pertaining to [her], which has for some reason mistakenly caused federal investigatory actions." Pl.'s Opp. & Cross-Mot., Att. 1 (Declaration of Uzoma Kalu), ¶¶ 2, 4. She has observed that, "for no apparent reason," she has "regularly had [her] air travel flight boarding passes designated as 'Secondary Security Screening Selection (SSSS)[,] which has required additional security measures when [she] travel[s]." Id., ¶ 5. She has "also experienced unusual IRS tax audits," suggesting that there is "something within [her] federal

records . . . causing th[e] additional . . . investigatory activity." Id.  Hoping to get to the bottom

of things, she retained attorney Daniel J. Stotter to submit FOIA requests on her behalf to the

IRS, TSA, and FBI.  See id., ¶ 3.  The following generally summarizes her interactions with each

agency; where helpful, additional facts will be set forth in the Analysis section, *infra*.

    A.  Internal Revenue Service

    On June 26, 2013, Stotter submitted a FOIA request to the IRS, seeking "[a]ll IRS

records, excluding any tax filings, listing my client's name (Uzoma Kalu), or otherwise

describing or discussing my client (Ms. Kalu), from January 2007 to the date of this record

request . . . ."  Def.'s Mot., Att. 3 (Declaration of Anna M. Robles, Senior Disclosure Specialist,

IRS), Exh. A (IRS FOIA Request) at 1.  When the Service received the request, it determined

that in order to release this information to Stotter, he would need to submit a form demonstrating

that Plaintiff had authorized such release.  See Robles Decl., ¶ 4.  Stotter thus submitted Form

2848, "Power of Attorney and Declaration of Representation."  See id., ¶ 7.  The IRS deemed the

form insufficient, however, believing it incomplete.  See id.

    In subsequent communications, Stotter argued that based on his reading of the IRS FOIA

manual and regulations, "a Form 2848, listing all of the particular tax items that are subject to the

power of attorney is only required in matters involving tax records, and since the subject FOIA

request expressly indicate[d] that it d[id] not pertain to any tax records, it appear[ed] that the

general authorization . . . submitted from [his] client [wa]s sufficient . . . ."  Id., Exh. C (Letter

from Stotter to Robles, July 31, 2013).  He nevertheless sent a revised Form 2848 to the agency.

See Def.'s Mot., Att. 4 (Declaration of Delphine V. Thomas, Senior Disclosure Specialist, IRS),

¶ 3.  The IRS, however, believed that this form too was invalid.  See id.

    Eventually, after an extensive back and forth on the issue, the agency told Stotter it would

2

no longer reply to future letters "concerning these issues." See id., Exh. G (Letter from Thomas to Stotter, Dec. 5, 2013). Kalu thus filed this suit on June 11, 2014. Several months later, at the request of agency counsel, the IRS nonetheless conducted a search that led to the identification of 45 pages of "responsive" documents for tax years 2010 and 2011. See Thomas Decl., ¶ 11. While these have been provided to agency counsel, they have not been released to Plaintiff. See id.

B. Transportation Security Administration

On June 27, 2013, Stotter submitted a virtually identical FOIA request to the TSA. See Def.'s Mot., Att. 1 (Declaration of Teri Miller, Acting FOIA Officer, TSA), Exh. A (TSA FOIA Request) (seeking "[a]ll records listing my client's name (Uzoma Kalu), or otherwise describing or discussing my client (Ms. Kalu), from January, 2007 to the date of this records request"). The Administration subsequently indicated that it "need[ed] clarification on [Kalu's] request." Miller Decl., Exh. D (E-mail from Geraldine Lewis to Stotter (Aug. 14, 2013, 8:28 AM)). Specifically, it "need[ed] to know the topic/reason for the request (i.e.: credential problems; flight issues; TSA employee issues……)." See id. In response, Stotter explained:

> [M]y client seeks ALL responsive records to her 6/27/13 FOIA request, which would most certainly include (but is not limited to) any and all responsive records for each of the categories that you describe below [(credential problems, flight issues, TSA employee issues)], as well as any other responsive agency records as to any other subject matter within the scope of her June 27, 2013 FOIA request.
>
> As you know, a FOIA requester is not required to provide an agency with information as to their "purpose" for seeking records pursuant ot [sic] a FOIA request.

Miller Decl., Exh. D (E-mail from Stotter to Lewis (Aug. 27, 2013, 6:06 PM)).

TSA ultimately responded on January 9, 2014. See Miller Decl., ¶ 9. It said nothing

about whether it had conducted any searches or located any documents.  See id., Exh. F (Letter

from Yvonne L. Coates to Stotter, Jan. 9, 2014) at 1.  It stated only that it could "neither confirm

nor deny the existence of records contained in the Secure Flight Program concerning [his] client,

because the existence of such records would be indicative of placement on a Federal Watch

List."  Id.  Stotter filed an appeal shortly thereafter, see Miller Decl., Exh. G (TSA Appeal); as

TSA did not act on it for months, see Miller Decl., ¶¶ 10-11, Kalu's filing of this suit before a

final ruling does not present any exhaustion issues.

     C.  Federal Bureau of Investigation

     On June 25, 2013, Stotter submitted a FOIA request to the FBI, again seeking "[a]ll

records listing [his] client's name (Uzoma Mgbore Kalu), or otherwise describing or discussing

[his] client (Ms. Kalu), from January 2007 to the date of th[e] FOIA request . . . ."  Def.'s Mot.,

Att. 2 (Declaration of David M. Hardy, Section Chief of the Record/Information Dissemination

Section, FBI), Exh. A (FBI FOIA Request).  The Bureau responded on July 1, advising Stotter

that it was searching "the indices to its Central Records System."  Hardy Decl., ¶ 6; see also id.,

Exh. B (Letter from Hardy to Stotter, July 1, 2013).  It followed up a week later to inform him

that, "based on the information provided," it "was unable to identify main file records

responsive" to the request.  Hardy Decl., ¶ 7.  It further explained that "[b]y standard practice,

and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2), th[e] response

neither confirm[ed] nor denie[d] the existence of the subject's name on any watch list."  Id.

Stotter promptly appealed, and the Bureau affirmed its response.  See id., Exh. F (Letter from

Sean O'Neill to Stotter, Sept. 10, 2013) at 1.

     Not long after, on November 12, Stotter submitted a second FOIA request to the FBI,

seeking "[a]ll records listing my client's name (Uzoma Kalu), or otherwise describing or

discussing my client (Ms. Kalu), from <u>January, 1995 to the date of this record request</u>, located

within <u>any</u> FBI system of records or documents . . . ." Hardy Decl., Exh. G (E-mail from Stotter

to FBI (Nov. 12, 2013, 12:18 PM)).  The request specifically stated, "<u>If there are any separate</u>

<u>systems of records that are not directly connected with the FBI's main files, please also search in</u>

<u>any such other or independent or free standing systems of records</u> . . . ." <u>Id.</u>  In its response to

this request, the agency reiterated that it could neither confirm nor deny the existence of Kalu's

name on any watch lists.  <u>See</u> Hardy Decl., Exh. H (Letter from Hardy to Stotter, Dec. 2, 2013).

It then indicated that after an additional search, it had found nothing.  <u>See id.</u>  Stotter thereafter

filed another appeal, which the FBI denied.  <u>See</u> Hardy Decl., ¶¶ 13, 15.  Unhappy with this

outcome, Kalu filed this suit against the IRS, TSA, and FBI.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986); <u>Holcomb v.</u>

<u>Powell</u>, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the

substantive outcome of the litigation.  <u>See</u> <u>Liberty Lobby</u>, 477 U.S. at 248; <u>Holcomb</u>, 433 F.3d at

895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.  <u>See</u> <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007); <u>Liberty Lobby</u>, 477

U.S. at 248; <u>Holcomb</u>, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely

disputed must support the assertion" by "citing to particular parts of materials in the record" or

"showing that the materials cited do not establish the absence or presence of a genuine dispute,

or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P.

56(c)(1).  The moving party bears the burden of demonstrating the absence of a genuine issue of

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment.

See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case,

the Court may grant summary judgment based solely on information provided in an agency's

affidavits or declarations when they "describe the justifications for nondisclosure with

reasonably specific detail, demonstrate that the information withheld logically falls within the

claimed exemption, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith."  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009)

(citation omitted).

## III.   Analysis

Congress enacted FOIA in order to "pierce the veil of administrative secrecy and to open

agency action to the light of public scrutiny."  Dep't of Air Force v. Rose, 425 U.S. 352, 361

(1976) (citation omitted).  "The basic purpose of FOIA is to ensure an informed citizenry, vital to

the functioning of a democratic society, needed to check against corruption and to hold the

governors accountable to the governed."  John Doe Agency v. John Doe Corp., 493 U.S. 146,

152 (1989) (citation omitted).  The statute provides that "each agency, upon any request for

records which (i) reasonably describes such records and (ii) is made in accordance with

published rules . . .  shall make the records promptly available to any person."  5 U.S.C.

§ 552(a)(3)(A).  Consistent with this statutory mandate, federal courts have jurisdiction to order

the production of records that an agency improperly withholds.  See 5 U.S.C. § 552(a)(4)(B);

Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

"Unlike the review of other agency action that must be upheld if supported by substantial

evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)).  "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

As noted previously, the parties have cross-moved for summary judgment on whether the agencies have fully discharged their duties under FOIA.  The Court will address their responses separately, beginning with the IRS.

A.  Internal Revenue Service

The IRS's main argument is that Plaintiff's claim against the Service should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because she failed to exhaust her administrative remedies.  While exhaustion arguments typically concern a litigant's failure to abide by an agency's internal-appeals process, the IRS's point here concerns the adequacy of Kalu's initial request.  More specifically, it contends that her request did not comply with the agency's FOIA regulations because both her initial and revised Form 2848 Power of Attorney were invalid.  Although the Court rejects the standard the government invokes, it agrees that Plaintiff has failed to perfect her request and thus concludes that the claim against the Service should be dismissed without prejudice.

1.  *Standard*

The IRS has moved to dismiss here under Rule 12(b)(1) for lack of subject-matter jurisdiction.  See Def.'s Mot. at 11-12 (citing Hymen v. Merit Sys. Prot. Bd., 799 F.2d 1421, 1423 (9th Cir. 1986), and Crooker v. U.S. Secret Serv., 577 F. Supp. 1218, 1219-20 (D.D.C.

1983)).  This is not the correct rule.  In this circuit, although it is generally understood that a

FOIA requester must exhaust administrative remedies before filing suit, it is also well settled that

this exhaustion requirement is not jurisdictional.  See Hidalgo v. FBI, 344 F.3d 1256, 1258 (D.C.

Cir. 2003).  Instead, it is "a jurisprudential doctrine" that prevents judicial review "if 'the

purposes of exhaustion' and the 'particular administrative scheme' support such a bar."  Id. at

1258-59 (citing Oglesby v. Dep't of Army, 920 F.2d 57, 61 (D.C. Cir. 1990)).

Courts thus typically evaluate FOIA-exhaustion claims under Rule 12(b)(6).  See, e.g.,

Hidalgo, 344 F.3d at 1260 (remanding case to district court to dismiss complaint under Rule

12(b)(6) because plaintiff failed to exhaust); Jean-Pierre v. Federal Bureau of Prisons, 880 F.

Supp. 2d 95, 100 n.4 (D.D.C. 2012) ("Although FOIA cases typically and appropriately are

decided on motions for summary judgment, where an agency argues that the requester has failed

to exhaust his administrative remedies, courts analyze the matter under Rule 12(b)(6) for failure

to state a claim.") (internal quotation marks and citations omitted).  Because both parties rely on

materials outside of the Complaint to support their positions – i.e., declarations and exhibits –

however, the Court will convert the motion into one for summary judgment.  See Fed. R. Civ. P.

12(d); see also, e.g., Vest v. Dep't of Air Force, 793 F. Supp. 2d 103, 112 (D.D.C. 2011)

(evaluating exhaustion issue under Rule 56 "[b]ecause resolution of the exhaustion issue will

require consideration of 'matters outside the pleadings'"); Latham v. Dep't of Justice, 658 F.

Supp. 2d 155, 158 (D.D.C. 2009) (same).  With the Rule 56 standard in mind, the Court turns to

the agency's exhaustion argument.

### 2. *Adequacy of Plaintiff's Request*

Under FOIA, an agency must promptly release records when it receives a request that (1)

"reasonably describes" the records sought and (2) "is made in accordance with published rules

stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A).  If

an agency receives a request that does not comply with these conditions, it is not obligated to

process the request.  If a requester nonetheless files suit, she is said to have failed to exhaust her

administrative remedies, and she must file a perfected request before a court will compel the

agency to respond.  See, e.g., Walsh v. FBI, 905 F. Supp. 2d 80, 84 (D.D.C. 2012); Rodriguez-

Cervantes v. Dep't of Health & Human Servs., 853 F. Supp. 2d 114, 117 (D.D.C. 2012); Strunk

v. Dep't of State, 693 F. Supp. 2d 112, 114 (D.D.C. 2010).

 Here, the IRS argues that Kalu failed to exhaust because she did not comply with its

regulations governing FOIA requests.  Those regulations provide, in pertinent part, that "[i]n the

case of a request for records the disclosure of which is limited by statute or regulations," the

request must "establish the identity and the right of the person making the request to the

disclosure of the records in accordance with paragraph (c)(5)(iii) of this section."  26 C.F.R. §

601.702(c)(4)(i)(E).  That paragraph provides, in turn, that "[i]n the case of an attorney-in-fact,

or other person requesting records on behalf of or pertaining to other persons, the requester shall

furnish a properly executed power of attorney, Privacy Act consent, or tax information

authorization, as appropriate."  Id., § 601.702(c)(5)(iii)(C).  In the Service's view, Kalu's request

was deficient because both her initial and revised Form 2848 Power of Attorney were

incomplete.

 Plaintiff does not take issue with the agency's position that a Form 2848 was necessary to

obtain the records that she was seeking.  She argues, instead, that the forms she submitted were

complete or were at least in "substantial compliance" with the requirements.  After reviewing her

submissions, the Court cannot concur.

 Beginning with the first Form 2848, Kalu did not fill out Part I, Line 3.  See Exh. B

(Letter from Stotter to Robles, July 24, 2013) at 2 (July 24 Form 2848).  That line requires a

taxpayer to provide information about the matters in which she is authorizing her attorney to

represent her.  It contains three columns, titled "Description of Matter," "Tax Form Number,"

and "Year(s) or Period(s)."  Kalu left each of these columns blank on her initial submission.  See

id.

In her Opposition, she repeatedly emphasizes that her FOIA request did not encompass

tax filings and that it thus made no sense to ask her what tax forms and years were applicable.

Yet such an argument does not address her failure to at least fill out the column for "Description

of the Matter."  Absent some sort of description, it is easy to see that the Power-of-Attorney form

would not be valid – the Service would simply not know for what she was authorizing Stotter to

represent her.

The instructions for filling out Line 3 also make clear that she should not have left these

columns blank.  They state:

> Enter the description of the matter, and where applicable, the tax
> form number, and the year(s) or period(s) in order for the power of
> attorney to be valid. . . .  If the matter is not a tax matter, or if the
> tax form number, or years or periods does not apply to the matter
> (for example, representation for . . . FOIA) specifically describe
> the matter to which the power of attorney pertains . . . and enter
> "Not Applicable" in the appropriate column(s).

Instructions for Form 2848 (revised March 2012).  Because she wrote nothing in these fields, the

Power of Attorney was invalid.

As noted above, she did attempt to remedy the defects, submitting a revised Form 2848

that the agency received on September 10, 2013.  See Thomas Decl., Exh. A (Letter from Stotter

to Robles, Sept. 5, 2013) at 5 (September 5 Form 2848).  From the agency's perspective,

however, the updated form was still flawed in two respects.  First, although she wrote in the

"Description of the Matter" field that she was authorizing Stotter to represent her regarding her "FOIA request of 06/26/13," she did not fill out the other two columns for the "Tax Form Numbers" and the "Year(s) or Period(s)." <u>See</u> Reply at 4 n.3; Thomas Decl., ¶ 3.  Second, this time around, Stotter did not sign and date Part II, the "Declaration of Representative." <u>See</u> Reply at 4 n.3; Thomas Decl., ¶ 3.

The Court is unsure whether the first of these defects is significant enough to deem her Form 2848 incomplete.  The headings for those columns, after all, suggest that one must fill them out only "if applicable." <u>See</u> September 5 Form 2848.  And although the instructions for the form indicate that one should write "Not Applicable" if those columns are not relevant or appropriate, <u>see</u> Instructions for Form 2848 (revised March 2012), Kalu wrote in the first column: "This FOIA request does not involve tax records."  September 5 Form 2848.  It is not clear that such <i>de minimis</i> omissions should constitute a failure to comply with the regulations and thus a failure to exhaust.  <u>Compare, e.g.</u>, <u>Latham</u>, 658 F. Supp. 2d at 160 ("Plaintiff has complied substantially with the requirement that he certify his identity, and the content of his certification alone is not a sufficient basis on which to outright reject his FOIA request."), <u>with</u> <u>Jean-Pierre</u>, 880 F. Supp. at 102 (explaining that "[e]ven small failures to comply with FOIA regulations can mean the attempted request is improper").

In any event, Stotter's failure to complete Part II <u>was</u> significant.  That section specifically warns: "IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED."  September 5 Form 2848.  Other parts of the form state that the authorized "[r]epresentative(s) must sign and date this form on page 2, Part II," <u>id.</u>, as do the instructions.  <u>See</u> Instructions for Form 2848 (revised March 2012).  In her Opposition and Reply, Plaintiff nowhere addresses Stotter's failure to

complete this portion of the form.  Since she offers no explanation or justification for leaving Part II of the revised form blank, the Court must conclude that the second form was incomplete and thus inadequate.

As Kalu has thus failed to submit a perfected request, her claim against the IRS will be dismissed.  See, e.g., Strunk, 693 F. Supp. 2d at 115 (dismissing FOIA claims because requests did not comply with regulations requiring written authorization to release information).  The Court, accordingly, need not address the parties' dispute regarding the adequacy of the agency's eventual search and its justification for withholding the 45 pages of responsive documents that it has identified.

In an effort to assist the parties in future discussions, however, the Court notes that this controversy appears to have arisen largely because they have been talking past one another.  The IRS has, for instance, repeatedly stated that it needs information about the "[t]ype of return or return information to be disclosed," Robles Decl., Exh. D (Letter from Robles to Stotter, Aug. 6, 2013), while Stotter has consistently emphasized in response that Kalu's request "does not pertain to any tax records."  See, e.g., Letter from Stotter to Robles, July 31, 2013.  The agency recently stated in its Motion that if it "received a perfected Form 2848, [it] would still require additional information regarding the types of documents sought as almost all information held or processed by the IRS constitutes return information or tax documents under section 6103(e)." Def.'s Mot. at 13.  The confusion appears to stem from the different meanings that the parties attribute to the terms "tax records" and "return information."  While it seems that Kalu does not wish to obtain the sorts of tax forms ordinarily filed in the course of completing one's annual tax returns – such as 1099 Forms and W-2 Forms – it appears that she does want certain "return information," as that term is defined in the Internal Revenue Code.  "Return information" is

broadly defined there as:

> a taxpayer's identity, the nature, source, or amount of his income,
> payments, receipts, deductions, exemptions, credits, assets,
> liabilities, net worth, tax liability, tax withheld, deficiencies,
> overassessments, or tax payments, <u>whether the taxpayer's return
> was, is being, or will be examined or subject to other investigation
> or processing, or any other data, received by, recorded by, prepared
> by, furnished to, or collected by the Secretary with respect to a
> return or with respect to the determination of the existence, or
> possible existence, of liability (or the amount thereof) of any
> person under this title for any tax, penalty, interest, fine,
> forfeiture, or other imposition, or offense</u> . . . .

26 U.S.C. § 6103(b)(2)(A) (emphasis added).  Although some of the agency's references to tax

forms may have ignored the focus of Kalu's request, Stotter may have also misinterpreted the

agency's references to "tax records" and "return information."  The Court hopes that this

clarification will aid the parties as they attempt to reach an administrative resolution of this

matter.

B.  <u>Transportation Security Administration</u>

Plaintiff's dispute with TSA centers, conversely, on the adequacy of the agency's search

for responsive records.  "An agency fulfills its obligations under FOIA if it can demonstrate

beyond material doubt that its search was 'reasonably calculated to uncover all relevant

documents.'"  <u>Valencia-Lucena v. Coast Guard</u>, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting

<u>Truitt v. Dep't of State</u>, 897 F.2d 540, 542 (D.C. Cir. 1990)); <u>see also</u> <u>Steinberg v. Dep't of

Justice</u>, 23 F.3d 548, 551 (D.C. Cir. 1994).  The adequacy of an agency's search for documents

requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly,

upon the facts of each case."  <u>Weisberg v. Dep't of Justice</u>, 745 F.2d 1476, 1485 (D.C. Cir.

1984).  To meet its burden, the agency may submit affidavits or declarations that explain the

scope and method of its search "in reasonable detail."  <u>Perry v. Block</u>, 684 F.2d 121, 127 (D.C.

Cir. 1982).  Absent contrary evidence, such affidavits or declarations are sufficient to show that

an agency complied with FOIA.  See id.  On the other hand, if the record "leaves substantial

doubt as to the sufficiency of the search, summary judgment for the agency is not proper."

Truitt, 897 F.2d at 542.

As a reminder, Plaintiff has requested all records listing her name or otherwise discussing

or describing her.  See TSA FOIA Request.  To demonstrate the adequacy of its search, TSA

submitted the declaration of Teri Miller, the Acting FOIA Officer for the agency.  See Miller

Decl., ¶ 1.  At the outset, Miller asserts that Kalu's request did not reasonably describe the

records sought.  See id., ¶¶ 12-13.  She notes that the Department of Homeland Security's FOIA

regulations require an individual to describe the requested records in enough detail that

employees can locate them "with a reasonable amount of effort."  Id., ¶ 12 (quoting 6 C.F.R. §

5.3(b)) (internal quotation marks omitted).  She further explains that "TSA does not maintain a

central index of records on individuals," and that it has "450 U.S. airports and 39 TSA program

offices."  Id., ¶ 13.  Because of this, she concludes, "conducting a broad search as requested by

Plaintiff would have imposed an undue hardship."  Id.

The agency, accordingly, processed the request based on the "very limited particular

subject matters that were described in the correspondence with Plaintiff's counsel" – i.e.,

"credential problems; flight issues; [and] TSA employee issues."  Id., ¶¶ 7, 14.  To do so, the

Administration "tasked the two TSA offices it deemed most likely to have responsive records" –

namely, the Office of Transportation Security Redress (OTSR) (now known as the

Transportation Security Redress Branch) and the Office of Intelligence and Analysis (OI) – with

conducting searches.  Id., ¶ 14.

The first of these offices – the OTSR – "maintains records on individuals who have

petitioned for redress as a result of difficulties with TSA security procedures, such as delayed or denied boarding or additional screening." Id., ¶ 16.  It searched its Redress Management System, "which contains records of all redress requests received by TSA." Id., ¶ 17.  It additionally searched the email account to which travelers can submit redress requests and inquiries.  See id. Both of these searches utilized Kalu's first and last name, as well as her date of birth.  See id. "Despite searching for approximately 30 minutes," OSTR came up empty.  Id.

The second office – OI – is "responsible for assessing and disseminating intelligence related to transportation." Id., ¶ 18.  It thus "maintains records of individuals identified in intelligence, counterintelligence, transportation security, or information system security reports and supporting materials . . . ." Id.  When it received Kalu's request, "OI tasked its Watch division, which searched two databases, TSA's Selectee and No-Fly Database and the Lotus Notes Log Entry Database." Id., ¶ 19.  The first of these "contains names of individuals who are subject to additional screening prior to boarding an aircraft and individuals who are prohibited from boarding an aircraft flying to, from, or over the United States or accessing the sterile area of a U.S. airport." Id., ¶ 20.  The second is the "official log of events taken during the course of TSA intelligence operations . . . ." Id., ¶ 21.  The office searched these databases "for approximately 20 minutes," using Plaintiff's name and date of birth.  See id., ¶ 22.  The Lotus Notes search did not turn up any responsive documents, and the agency refuses to confirm or deny whether the search of the Selectee and No-Fly database located any relevant records.  See id., ¶ 23.

The Court will first address Plaintiff's challenges to the agency's refusal to confirm or deny the existence of watch-list-related records within OI, and it will then take up her arguments against the sufficiency of the agency's search for other records within both OI and OSTR, as

well as beyond those offices.

1. *TSA's* Glomar *Response*

With respect to records contained in the Selectee and No-Fly Database, TSA issued a so-called Glomar response, refusing to confirm or deny whether it has responsive records.  Such a response is permissible when disclosing the existence (or nonexistence) of responsive records would itself "cause harm cognizable under [a] FOIA exception."  Wolf v. CIA, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting Gardels v. CIA, 689 F.2d 1100, 1103 (D.C. Cir. 1982)) (internal quotation marks omitted).  To sustain a Glomar response, the government must show that the mere fact of whether it has (or does not have) relevant records is protected from disclosure under one of the FOIA exemptions.  See id.  Courts considering Glomar responses apply the exemption standards developed in non-Glomar cases to determine whether the information is properly withheld.  See id. (citing Gardels, 689 F.2d at 1103-05).

In this case, TSA invoked Exemption 3 as the basis for its response.  That exemption permits agencies to withhold information "specifically exempted from disclosure by statute" if the statute either "(A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph."  5 U.S.C. § 552(b)(3).  The Administration contends that 49 U.S.C. § 114(r)(1) is one such statute, as it provides:

> Notwithstanding section 552 of title 5, the Under Secretary shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security under authority of the Aviation and Transportation Security Act (Public Law 107-71) or under chapter 449 of this title if the Under Secretary decides that disclosing the information would –
>> (A) be an unwarranted invasion of personal privacy;

(B) reveal a trade secret or privileged or confidential
     commercial or financial information; or
(C) be detrimental to the security of transportation.

Pursuant to that provision, the agency issued regulations that prohibit the disclosure of

"Sensitive Security Information." See 49 C.F.R. § 1520 et seq. This includes "[s]ecurity

screening information," such as "[i]nformation and sources of information used by a passenger

or property screening program or system, including an automated screening system." Id., §

1520.5(b)(9)(ii). According to the Administration, it issued a Glomar response because

"acknowledging the existence or nonexistence of records regarding Plaintiff in this Database

would reveal whether Plaintiff is or is not on a watchlist utilized by TSA for passenger pre-board

screening." Miller Decl., ¶ 28. "Plaintiff's status with respect to those watchlists (i.e., on or off)

is SSI," and the results of OI's search must be withheld under Exemption 3. Id.

Kalu does not challenge the government's assertion of Glomar on the basis of Exemption

3 and 49 U.S.C. § 114(r)(1). In fact, she concedes that "Defendants are correct in observing that

it can properly assert a 'Glomar' response of neither confirming nor denying whether it found

Plaintiff's name on those lists." Pl.'s Opp. & Cross-Mot. at 20.

She argues, instead, that a Glomar response does not excuse the agency from "its

statutory duty to perform a search for all responsive records" and to "review each record

individually[] to determine if its 'Glomar' response is in fact appropriate as to each responsive

record." Id. An obvious flaw with the first part of this argument is that the agency did conduct a

search of the no-fly database here – it just refused to say whether that search turned up any

records. See Miller Decl., ¶ 19. More fundamentally, however, Kalu's argument

misunderstands Glomar, which "narrows the FOIA issue" to whether an agency must disclose

"the existence of records vel non." Wolf, 473 F.3d at 374 n.4. If the mere fact that records do or

17

do not exist is protected by a FOIA exemption, that ends the inquiry.  No actual search or record review is required.  See People for the Ethical Treatment of Animals v. NIH, 745 F.3d 535, 540 (D.C. Cir. 2014) ("[T]o the extent the circumstances justify a Glomar response, the agency need not conduct any search for responsive documents or perform any analysis to identify segregable portions of such documents.") (citing Wolf, 473 F.3d at 374 n.4, and Elec. Privacy Info. Ctr. v. NSA, 678 F.3d 926, 934 (D.C. Cir. 2012)); cf. Lame v. Dep't of Justice, 654 F.2d 917, 928 (3d Cir. 1981) (may be occasions where search and review is required to determine if Glomar is appropriate, such as where exemption requires inquiry into whether source was promised confidentiality).

Unwilling to give up, Plaintiff contends that the agency cannot invoke Glomar to protect records "indicating that there was some type of error or mistake that . . . improperly caused [her] name to be on these lists."  Pl.'s Opp. & Cross-Mot. at 21.  Without any supporting authority, she asserts that records showing an individual has been wrongly placed on a no-fly or special screening list are not protected under Exemption (b)(3) and 49 U.S.C. § 114(r)(1).  She has, however, already conceded that the statute and its attendant regulations are a proper basis for withholding SSI, and SSI is not limited to information regarding individuals who are properly on the no-fly and screening lists.  If records showing some sort of error do exist, TSA would not have to acknowledge such fact because that would disclose SSI – e.g., that Plaintiff was on a watch list.  The argument thus holds no water.

This does not leave Kalu without redress, however.  As TSA explained to Stotter during the administrative process, DHS has a Traveler Redress Inquiry Program (TRIP) to "assist individuals who believe they have been incorrectly delayed, denied boarding, identified for additional screening, or have experienced difficulties when seeking entry into the United States."

Letter from Yvonne L. Coates to Stotter, Jan. 9, 2014.  Under this program, she can request that

DHS review her information and modify its records if she has been mistakenly added to a watch

list.

### 2. *TSA's Search*

Plaintiff finds more success challenging the agency's response to the rest of her request.

To begin, TSA unilaterally rewrote her request to encompass only records falling within a

limited set of topics it had come up with – *i.e.*, "credential problems," "flight issues," and "TSA

employee issues."  See Miller Decl., ¶¶ 7, 14.  It suggests that this was appropriate because her

request was impermissibly broad.  See id., ¶¶ 14-15.  It has, however, failed to adequately

explain why the limiting principles it applied to Plaintiff's request were reasonable under the

circumstances.

The key inquiry in determining whether a FOIA request is sufficiently specific "is

whether the agency is able to determine 'precisely what records (are) being requested.'"  Yeager

v. Drug Enforcement Admin., 678 F.2d 315, 326 (D.C. Cir. 1982) (quoting S. Rep. No. 854, 93d

Cong., 2d Sess. 10 (1974)); see also, e.g., Kowalczyk v. Dep't of Justice, 73 F.3d 386, 388 (D.C.

1996).  Applying this standard, courts have frequently concluded that record requests that seek

documents "pertaining to" or "concerning" individuals or particular agency actions are not

sufficiently specific.  See, e.g., Latham, 658 F. Supp. 2d at 161 (holding that request for "any

records . . . that pertain in any form or sort to [plaintiff]" was "overly broad") (internal quotation

marks and citation omitted); Fonda v. CIA, 434 F. Supp. 498, 501 (D.D.C. 1977) (finding

request too broad because "[p]laintiff offer[ed] no criterion by which defendants [could]

determine which documents 'concern her.'").  It is easy to see that aspects of Kalu's request may

have been too broad – in addition to seeking records that "list" her name, she sought all records

that "otherwise describe[e] or discuss[]" her.  See Miller Decl., ¶ 4.  Without other identifying

information, such as a case number, it could be difficult to construct a search for records that do

not identify her by name, but merely "discuss" or "describe" her.

Any limiting principles that an agency applies to its search for records, however, must be

reasonable.  See Larson, 565 F.3d at 869 (explaining that adequacy of agency search "is

measured by the reasonableness of the effort in light of the specific request'") (quoting Meeropol

v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986)); Weisberg v. Dep't of Justice, 705 F.2d 1344,

1351 (D.C. Cir. 1983) ("The adequacy of an agency's search is measured by a standard of

reasonableness and is dependent upon the circumstances of the case.") (internal quotation marks

and citations omitted); McGehee v. CIA, 697 F.2d 1095, 1101 (D.C. Cir. 1983) (agency had

burden to establish that cut-off time limit on search was reasonable); see also, e.g., McKinley v.

FDIC, 807 F. Supp. 2d 1, 4 (D.D.C. 2011); Charles v. Office of Armed Forces Med. Exam'r, 730

F. Supp. 2d 205, 214 (D.D.C. 2010).  While the breadth of Kalu's request might have supported

TSA's limiting its search to documents and files that contain her name, see Fonda, 434 F. Supp.

at 500-01, the Court fails to see how it supports the agency's decision to search for documents

based on three seemingly random topics.

In its declaration and briefing, TSA only averred that a search for all responsive records

would have imposed an undue burden because of the vast number of airports and program

offices that it maintains.  See Miller Decl., ¶ 13.  While this fact might have established the

reasonableness of limiting the agency's search to centralized databases and specific offices to

which it obtained leads, see, e.g., Kowalczyk, 73 F.3d at 388-90, the Court cannot discern the

connection between the vast number of offices and TSA's decision to restrict its search based on

subject matter – that is, to records pertaining to credential problems, flight issues, and TSA

employee issues.  TSA does not, for instance, explain how these limits sensibly relate to the types of centralized databases that it maintains or the wording of her request.  At bottom, the decision seems random.

The Court also notes that the narrowing of Kalu's request in such a fashion appears particularly unreasonable in light of the fact that she (and Stotter) expressly refused to limit the request to those topics.  See E-mail from Stotter to Lewis (Aug. 27, 2013, 6:06 PM).  Perhaps if TSA had clearly informed them that it could not process her request without additional clarification, such refusal could have justified the agency's limiting Kalu's request as it did.  But TSA did not.  In fact, despite DHS regulations requiring it to tell requesters that their requests are too broad, see 6 C.F.R. § 5.3 ("If a component determines that your request does not reasonably describe records, it shall tell you either what additional information is needed or why your request is otherwise insufficient."), it did not notify Plaintiff that it needed additional information to process her request.  Instead, the agency only asked what her purpose was in requesting the records, see E-mail from Lewis to Stotter (Aug. 14, 2013, 8:28 AM)) ("We need clarification on your request; we need to know the topic/reason for the request (i.e.: credential problems; flight issues; TSA employee issues……).") (emphasis added), which a FOIA requester generally need not disclose.  See, e.g., Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004). It never stated that it needed the information to conduct a search, or that it would limit her request on its own accord if she did not provide it.  See E-mail from Lewis to Stotter (Aug. 14, 2013, 8:28 AM)).

The Court, in sum, cannot conclude that the agency's decision to restrict her request to documents pertaining to credential problems, flight issues, and TSA employee issues was reasonable.  Cf. Charles, 730 F. Supp. 2d at 215 (rejecting agency's narrowing of plaintiff's

request "based on a criterion that the plaintiff did not articulate").

Yet even assuming that the agency was allowed to narrow the request as it did, TSA would still have failed to establish the adequacy of its search.  Miller avers that the Administration "tasked the two . . . offices it deemed most likely to have responsive records." Miller Decl., ¶ 14.  She did <u>not</u> aver that the agency searched all of the FOIA offices likely to contain relevant documents.  In the absence of such an attestation, courts typically hold that an issue of material fact exists as to the adequacy of an agency's search.  Indeed, in <u>Oglesby</u>, the D.C. Circuit rejected an agency's attestation that it had searched the offices "most likely" to contain the requested records.  <u>See</u> 920 F.2d at 68.  It explained that although an agency is not required to search every record system, it "cannot limit its search to only one record system if there are others that are likely to turn up the information requested."  <u>Id.</u>  Because it was not clear from the government's affidavit in <u>Oglesby</u> that the system it had searched was "the <u>only</u> possible place that responsive records [were] likely to be located," the circuit rejected the declaration as insufficient.  <u>Id.</u>; <u>see also, e.g.</u>, <u>Am. Immigration Council v. Dep't of Homeland Sec.</u>, 950 F. Supp. 2d 221, 230-31 (D.D.C. 2013) (holding agency assertion that it searched offices "most likely" to possess responsive records was insufficient).  Here, too, in the absence of an attestation that the OTSR and OI were the <u>only</u> offices likely to contain relevant documents (as opposed to the two "most likely"), the Court cannot find that the agency's search was adequate.

    C.  <u>Federal Bureau of Investigation</u>

That leaves the FBI.  Kalu does not challenge its search of its main files or its search for cross-references within those files; she takes issue only with aspects of its <u>Glomar</u> response regarding the existence (or nonexistence) of records showing she is on a watch list.  <u>See</u> Pl.'s

Opp. & Cross-Mot. at 22-24.  As with TSA, she contends that the Bureau should have conducted

a search for responsive records and reviewed them to determine whether a Glomar response was

appropriate.  She again believes that any records evidencing errors or mistakes that led to her

placement on a watch list are not properly withheld.  Id.

For some reason, although the FBI asserted during the administrative proceedings that it

could not confirm or deny the existence of such records based on Exemption 7(E), see Hardy

Decl., Exh. D (Letter from Hardy to Stotter, July 8, 2013); id., Exh. H (Letter from Hardy to

Stotter, Dec. 2, 2013), it does not address its Glomar response in its briefs here.  It even ignored

the issue in its Reply – after Kalu focused solely on this issue in her Opposition.  Although

Kalu's arguments would appear to lack merit for the reasons discussed in upholding TSA's

Glomar response, the Court cannot definitively conclude this without knowing whether the

Bureau is still asserting Glomar and, if it is, the basis for that response.  The Court thus denies

the FBI's Motion insofar as it relates to watch-list records.

**IV.     Conclusion**

For the foregoing reasons, the Court will grant in part and deny in part Defendants'

Motion for Summary Judgment, and it will grant in part and deny in part Plaintiff's Cross-

Motion for Summary Judgment.  A contemporaneous Order will so state.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  July 1, 2015